IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| CURTIS L. FORT | ) | CASE NO. 07-70004 |
| KATHLEEN D. FORT | ) | |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| CURTIS L. FORT and | ) | |
| REBECCA B. CONNELLY, TRUSTEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 08-07075 |
| STATE OF FLORIDA DEPARTMENT | ) | |
| OF REVENUE | ) | |
| o/b/o | ) | |
| AVALON COLEMAN | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

The matters before this Court are the Motions for Partial Summary Judgment

("the Motions") filed by Curtis Fort and the State of Florida in an adversary proceeding in which

Mr. Fort, in essence, seeks a determination of the following issues:  (1) whether the State of

Florida's claim will be paid in full according to the Order entered by this Court on October 11,

2007 allowing such claim in reduced amount upon and subject to the Debtors' successful

completion of their payment obligations under their confirmed plan; and (2) if so, whether the

State of Florida should be permanently enjoined from any further collection activity against Mr.

Fort.  In addition, Mr. Fort ultimately seeks a refund of $8,917.07, the amount he asserts has

been overpaid to the State, though that issue has been reserved pending the ruling of this Court

on the Motions.  In his Motion, Mr. Fort seeks judgment in his favor based primarily on the

asserted *res judicata* effect of the Order allowing the claim in reduced amount and Confirmation

Order, and, in its Motion, the State of Florida seeks judgment in its favor based on the non-

dischargeability of domestic support obligations and based on several doctrines which it asserts

limit the Court's jurisdiction to grant the relief sought by Mr. Fort.  Because the proof of claim

filed by the State of Florida involved money allegedly due for domestic support arrears, the

matter before the Court presents challenging issues regarding bankruptcy court jurisdiction.  A

hearing was held on this matter on May 11, 2009, during which counsel for both parties argued

their respective positions taken in the Motions for Summary Judgment.  At the conclusion of this

hearing, the Motions were taken under advisement.  The parties now having been fully heard on

the matters, and based on the following, this Court partially grants and partially denies both

Motions.

FINDINGS OF FACT

The facts relevant to the matter presently before this Court for the most part are

not disputed.  On January 3, 2007, Curtis and Kathleen Fort ("the Debtors") filed a voluntary

chapter 13 petition with this Court.  The State of Florida Department of Revenue, Child Support

Enforcement Program ("Florida" or "the State") filed a proof of claim in the case on April 12,

2007, alleging that the State held a priority claim in the amount of $14,393 for domestic support

arrears owed by Curtis Fort ("Mr. Fort").  In response, the Debtors filed an Objection to Claim

on August 20, 2007, alleging accounting errors and asserting that the amount of domestic

support actually owed was $2,850.22 and seeking a determination that the claim ought to be

disallowed to the extent that it exceeded such acknowledged amount.  This Objection was served

2

upon Florida's counsel with respect to this matter, Mr. Frederick F. Rudzik, who continues to

represent it in this Court in this adversary proceeding.  The Court's Order served with the

Objection provided as follows regarding a response to the Objection: "[I]t is [ordered] that

claimants [State of Florida] shall have thirty (30) days from the date of this order to file with the

. . . Court . . . a written response to said objection(s), and, absent same, claimant shall be in

default and the Movant may tender an Order sustaining the objection without further notice or

hearing.  If claimant timely files a response . . . , a hearing shall be held[.]"  While no response

was filed to the Objection, a hearing was nonetheless held on the matter on October 9, 2007, at

which no one appeared on Florida's behalf and during which the Debtors' counsel made certain

representations to this Court and also offered two exhibits, which this Court admitted into the

record.  Relying upon this evidence, the Court entered an Order sustaining the Debtors'

Objection on October 11, 2007, and allowed Florida's claim in the amount contended by the

Debtors of $2,850.22.  This Order was served upon counsel for the State.  Based on this ruling,

the Debtors on October 22, 2007 filed an Amended Chapter 13 Plan, which Plan provided for the

payment in full of such allowed claim and was confirmed by this Court's Order entered

December 6, 2007.  Florida did not file any objection to confirmation nor did it appeal or

otherwise challenge either the Order disallowing most of its claim or the Order confirming the

Amended Plan.

On December 8, 2008, the Debtors filed an Application to Quash Garnishment,

seeking a ruling by this Court that an amended garnishment order issued on December 7, 2007,

by a Circuit Court of the State of Florida related to the collection of the pre-petition domestic

support arrears alleged in the State's proof of claim be quashed.  Said Application was granted

3

by Order entered December 11, 2008.  On the same date the Application to Quash was filed, Mr.

Fort also filed a complaint initiating this adversary proceeding against the State of Florida

alleging that the State had engaged in a willful violation of the automatic stay by continuing to

garnish funds and collect $8,917.07 more than the allowed proof of claim provided.[1]  Mr. Fort

seeks entry of an Order which would declare that the claim has been paid in full and direct that

the State of Florida refund the purported overpayment amount of $8,917.07 to the Debtors.

The State of Florida filed its Answer on February 2, 2009, in which the State

denied that any willful violation of the automatic stay had occurred and pled several affirmative

defenses, asserting that the doctrine of comity, the doctrine of state sovereign immunity under

the Eleventh Amendment to the United States Constitution, the Tenth Amendment to the United

States Constitution, and the domestic relations exception together strip this Court of subject

matter jurisdiction to resolve the issues raised in the complaint.  The parties filed a Stipulation of

Facts on March 16, 2009.  The State of Florida filed its Motion for Summary Judgment on

March 30, 2009, to which Mr. Fort filed his response on April 10, 2009, and Mr. Fort filed his

Motion for Summary Judgment on March 31, 2009, to which the State filed its response on April

10, 2009.  The cross-motions came before this Court for hearing on May 11, 2009, at which

counsel for both parties presented oral arguments supporting their respective positions.

In addition to procedural facts already noted, the parties have stipulated to the

following facts:  On the proof of claim filed by the State of Florida on April 12, 2007, the State

---

[1] Ms. Connelly, the Debtors' chapter 13 trustee, was named as a party-plaintiff to the
complaint.  However, Mr. Hart signed the complaint solely as counsel for the Debtors.  The
complaint does not contain the endorsement of the chapter 13 trustee, and she has not otherwise
made an appearance in this proceeding.

identified Mr. Rudzik as the individual to whom notices should be sent and that service of the

Objection to Claim was made upon Mr. Rudzik. The Debtors' confirmed Chapter 13 Plan

provided for payment of the allowed claim in full. On September 24, 2007, the Circuit Court of

Florida, for the Eighth Judicial Circuit in Alachua County[2] ("the Circuit Court"), with

jurisdiction in the domestic support matter, entered an order terminating any future support

obligations as of March 29, 2007. According to the records of the Clerk of that court, the official

custodian of records for domestic support obligations under Florida statute, the total amount of

child support arrearages owed at the filing of the instant case was $14,393, which amount has not

been challenged in the circuit court having jurisdiction over the matter. Moreover, no action for

determination of dischargeability of the domestic relations obligation has been filed in any court.

Finally, a total of $1,120.51 of the allowed claim in the amount of $2,850.22 has been paid

through the Chapter 13 Plan as of February 26, 2009.

      With respect to the $14,393 figure for domestic support obligations allegedly

owed, the basis for this figure is nether stipulated nor apparent from the documentation provided

to this Court. Attached to Florida's proof of claim is a copy of a Modification Order entered by

the Florida state court dated November 13, 1995 in which the arrearage as of October 23, 1995

was stated to be $4,553.29 plus interest, all of which was indicated to be owed to the custodial

parent rather than to the State of Florida. This order established a new current support obligation

going forward in the amount of $210.74 bi-weekly and further provided that the arrearage was to

be satisfied by bi-weekly payments of $42.15 beginning November 15, 1995. The order also

---

[2] While the parties do not specifically identify the court which entered the garnishment
order in their stipulation, that information appears in the exhibit attached to the State of Florida's
proof of claim.

provided that Mr. Fort was responsible to pay a "clerk's depository fee" of $5.25 with each

payment, resulting in a total aggregate periodic payment of $258.14.  The Modification Order

provided that payments had to be made to the Clerk of the Court and that only payments made to

the Clerk would be credited.  It appears evident that the Modification Order must not have been

complied with fully by Mr. Fort afterwards because a bi-weekly payment of $42.15 towards the

arrearage would have satisfied it in a little more than four years, plus whatever interest might be

due, which almost certainly would have been fulfilled long before the filing date of this

bankruptcy case.

CONTENTIONS OF THE PARTIES

In his complaint, Mr. Fort notes that post-petition payments made to the State of

Florida applicable to its domestic support arrears claim through the date of the complaint total

$11,767.29, which amount includes forty-two bi-weekly payments of $252.90 after the

termination of the current support obligation made via wage deduction, totaling $10,621.38, and

distributions of $893.01 which the chapter 13 trustee had made as of the date of the complaint

under the provisions of the Plan.  As a result, Mr. Fort asserts that the State of Florida has been

overpaid on its allowed claim in the amount of $8,917.07.[3]  Moreover, Mr. Fort argues that the

failure of the State of Florida to terminate collection activity against him under a wage deduction

order in effect at the time of filing the present chapter 13 petition and the failure of the State to

adjust its accounts to reflect the Order of this Court allowing the State of Florida's claim in a

---

[3] This amount, however, does not appear to include in its calculation the post-petition
interest which continued to accrue on the allowed portion of the claim, as this calculation of
overpayment is simply the total amount paid to the State of Florida less the amount of the
allowed claim pursuant to this Court's Order of September 24, 2007.

reduced amount both constitute willful violations of the automatic stay by the State of Florida. As a result Mr. Fort seeks the following relief: (1) entry of an order declaring that the State of Florida's claim has been paid in full, including all applicable post-petition interest,[4] and permanently enjoining the State of Florida from any further collection activity against Mr. Fort; (2) entry of an order quashing the State of Florida's wage levy against Mr. Fort; (3) entry of an order disallowing the unpaid balance of the allowed claim filed by the State of Florida as paid in full; (4) entry of an order directing the State of Florida to refund to Mr. Fort the overpayment amount of $8,917.07, together with any money paid subsequent to the date of the complaint; and (5) entry of an order directing the State of Florida to pay attorney's fees related to this proceeding.

In its answer to the complaint, the State of Florida denies that the Order allowing its claim in a reduced amount established the amount due outside of the bankruptcy case. The State also denied any willful violation of the automatic stay. Additionally, the State of Florida asserts various affirmative defenses. First, the State argues that this Court is without subject matter jurisdiction to hear this case based upon the domestic relations exception to federal court jurisdiction and the Tenth Amendment to the United States Constitution. Second, the State argues that this Court should abstain from hearing the complaint based on the doctrine of comity. Finally, the State argues that, insofar as the complaint seeks damages from the State of Florida,

---

[4] In the complaint, Mr. Fort alleges that the claim, including all post-petition interest, has been paid in full. In his Motion, his response to the State of Florida's Motion, and during oral arguments on this matter, Mr. Fort acknowledged that post-petition interest was not anticipated by the plan and that the amount of such interest has not yet been determined. However, it is apparent that Mr. Fort is contending that, if this Court were to rule in his favor, post-petition interest would be deducted from any amount overpaid on the State's claim.

the action is barred by the doctrine of sovereign immunity as established by the Eleventh

Amendment to the United States Constitution.  Florida therefore argues that this Court should

either enter an order dismissing the complaint or, in the alternative, enter an order abstaining

from ruling on the issues presented by the complaint.

        In his Motion for Summary Judgment, Mr. Fort seeks judgment on the following:

(1) that the amount owed by Mr. Fort to the State of Florida on January 3, 2007, for pre-petition

domestic supports arrears was $2,850.22; (2) that, upon payment of that amount, all obligations

owed to the State of Florida will be satisfied in full with the exception of any interest accruing on

the $2,850.22 after January 3, 2007; (3) that, upon payment of that amount, the State is

permanently enjoined from any effort to collect from Mr. Fort any balance allegedly due on or

before January 3, 2007, aside from interest accruing on the $2,850.22 after January 3, 2007; (4)

that, as the Debtors' Chapter 13 Plan provided for payment in full of the $2,850.22, the State

shall return to Mr. Fort all funds received by it since January 3, 2007, except those funds

received either under the terms of the Plan or in payment of support obligations first due after

January 3, 2007; and (5) that failure of the State to adjust its accounts to reflect the Order

allowing the State's proof of claim in a decreased amount and the failure of the State to terminate

direct collection of the pre-petition claim constitute willful violations of the automatic stay and

the Order confirming the Debtors' Chapter 13 Plan.

        The State of Florida responds by arguing that non-dischargeable domestic support

obligations are unalterable through an order determining a claim amount based upon the plain

language of the Bankruptcy Code, the limited jurisdiction of this Court, and the domestic

relations exception to federal jurisdiction as well as the jurisdictional limitations recognized by

8

the *Rooker-Feldman* doctrine and the *Younger* doctrine.  According to the State's argument, this

Court's jurisdiction in ruling upon proofs of claim is limited to adjudication of the extent to

which the bankruptcy estate is responsible for the claim, per *Central Virginia Community*

*College v. Katz*, 546 U.S. 356, 377-78 (2006).  The State of Florida thus asserts that a

determination regarding a proof of claim related to domestic support obligations made under 11

U.S.C. § 502 is limited to a determination *in rem* which has a singular effect of establishing a

claimant's right to be paid from the bankruptcy estate, a position it argues is supported by the

decision in *In re Five Boroughs Mortgage Co.*, 176 B.R. 708 (Bankr. E.D.N.Y. 1995).  Any

additional amounts, according to the argument, are still obligations of the debtor as the

remainder of the claim is unaffected by the discharge.  The State also argues that §§ 502,

523(a)(5), and 1328(a)(2) together illustrate Congress' clear intent that domestic support

obligations cannot be discharged under any circumstances, which it asserts would be the

practical effect of granting Mr. Fort the relief requested.

        Based on this analysis, the State also argues that Mr. Fort is not entitled to

summary judgment for a refund of wages withheld post-petition because such judgment would

require a finding that the total amount owed to the State of Florida as of January 3, 2009 was

$2,850.22, and the State asserts that this is a disputed fact based on its arguments above.

Moreover, any request for a ruling that the State violated either the automatic stay or the terms of

the confirmation order must be denied because Congress has always given deference to domestic

support obligations in bankruptcy.  Based on this deference, as supported by 11 U.S.C. §§

362(b), 524, and 1328(a), the State argues that post-confirmation collection of domestic support

obligations does not violate the automatic stay provisions of 11 U.S.C. § 362.  Therefore, the

State argues that this Court should deny Mr. Fort's Motion for Summary Judgment.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The allowance or disallowance of a claim against the estate is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Determinations regarding the dischargeability of particular debts are likewise "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). "Core" proceedings also include "confirmation of plans" pursuant to 28 U.S.C. § 157(b)(2)(L). The Court concludes that it seems inescapable that determinations regarding the interpretation and legal effect of its orders allowing or disallowing filed claims and confirming chapter 13 plans as well as the enforcement of the automatic stay in bankruptcy are likewise "core" proceedings pursuant to those sub-sections and § 157(b)(2)(O) relating to "adjustment of the debtor-creditor . . . relationship."

The legal principles governing consideration of a motion for summary judgment are clear. Federal Rule of Bankruptcy Procedure 7056, which incorporates F.R.C.P. 56, provides that such a motion shall be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *In re McNallen*, 62 F.3d 619, 623 (4th Cir 1995).

I.

**POST-FILING CONTINUATION OF FLORIDA'S WAGE DEDUCTION ORDER
UPON THE DEBTOR'S INCOME WHILE AUTOMATIC STAY IN EFFECT**

Mr. Fort argues that the State of Florida's continued collection through wage garnishment of the pre-petition domestic support obligation violated the provisions of the automatic stay.  While the filing of a petition in bankruptcy ordinarily operates to stay the collection or enforcement of a debt by a creditor, § 362(b)(2)(C) provides that "[t]he filing of a petition . . . does *not* operate as a stay . . . with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute[.]"  11 U.S.C. § 362(b)(2)(C) (emphasis added).  It is clear that the wage deduction order is pursuant to a judicial order within the meaning of this statute.  The automatic stay is both generally broad in scope and one of the most powerful tools protecting a bankruptcy debtor and his or her property, but its reach is not unlimited and is defined by the language of the very Code section which creates it.  Other than the bare assertion that such action by the State violated the stay, Mr. Fort offers no legal argument which would avoid the application of the unambiguous language of § 362(b)(2)(C).  Therefore, this Court concludes that the actions of the State of Florida in this regard did not violate the automatic stay.

II.

**POST-CONFIRMATION CONTINUATION OF WAGE DEDUCTION ORDER**

While it is clear that no violation of the automatic stay has occurred, Mr. Fort also seeks a determination that the State of Florida violated the terms of the Confirmation Order.  Specifically, Mr. Fort alleges that the State of Florida's continued collection of the pre-petition domestic support arrears which were provided for by the terms of the Plan violated such Order.

11

While Mr. Fort does not cite to any specific provision in the Confirmation Order that was

allegedly violated, the arguments in support of this relief in his Motion for Summary Judgment

and the arguments of his counsel before this Court rely primarily on the fact that the Plan

proposes to pay the allowed claim of the State of Florida in full, and, therefore, the crux of Mr.

Fort's argument is actually that the post-confirmation collection of funds in excess of those

provided for in the plan was a violation of the provisions of 11 U.S.C. § 1327(a). That section

provides that "[t]he provisions of a confirmed [chapter 13] plan bind the debtor and each

creditor[.]" Such statement is clear, and, according to one commentator is a "strong statement

[to the effect that] [t]he terms of a confirmed plan are legal obligations of the debtor and all

creditors." Keith M. Lundin, *Chapter 13 Bankruptcy* § 229.1, at 229-1(3d ed. 2000 & Supp.

2004). Judge Lundin also cites a bevy of cases to support the fact that "the effect of

confirmation [is generally viewed] as *res judicata* with respect to all issues that were or could

have been litigated at or before the hearing on confirmation." *Id*; *see, e.g., Valley Historic Ltd.

P'ship v. Bank of New York*, 486 F.3d 831, 838 (4th Cir. 2007) ("A bankruptcy court's order of

confirmation is treated as a final judgment with *res judicata* effect, binding the parties by its

terms and precluding them from raising claims or issues that they could have or should have

raised before confirmation."); *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160,

162 (4th Cir. 1993) ("[A] bankruptcy court confirmation order generally is treated as *res

judicata*."); *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) ("It is a well-established principle of

bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily

attack a confirmed plan . . . [citation omitted]. The reason for this . . . mirrors the general

justification for *res judicata* principles[.]"); *Donnelly v. Official Comm. of Unsecured Creditors*,

12

73 Fed. Appx. 568, 572 (4th Cir. 2003)("Indeed, a bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect.").

Additionally, at least one court has considered a similarly-framed issue in analogous circumstances. In *In re Gellington*, 363 B.R. 497, the debtor, who was in arrears for child support payments as of the date of filing, filed an amended plan which provided for payment of those arrears inside the plan. *Id.* at 499. However, the confirmation order which was eventually entered mistakenly omitted a step-up in plan payments. *Id.* at 499-500. This led to further confusion for the creditor, including the assistant attorney general responsible for collection of the domestic support arrears who commenced garnishment of the debtor's wages as a means to obtain payment. *Id.* at 500. Subsequently, the confirmation order was corrected to reflect the appropriate step-up in plan payments which allowed for payments inside the plan of the domestic support arrears. *Id.* When the garnishment continued, the debtor filed a Motion for Sanctions, alleging a violation of the confirmation order pursuant to § 1327(a).[5] *Id.* In considering the debtor's position in this regard, the court observed that the "'binding effect of confirmation has led courts to conclude that proceedings inconsistent or incompatible with the confirmed plan are improper.'" *Id.* at 502 (quoting *In re Murray*, 350 B.R. 408, 418 (Bankr. S.D. Ohio 2006)). Because the confirmation order "must provide finality" with respect to the balance of creditors' rights with the debtor's responsibilities, the court concluded that the continued garnishment for pre-petition domestic support arrears for which payment in full was provided through the plan

_____

[5] The debtor also alleged a violation of the automatic stay, but the court summarily dismissed such contention for the same reason this Court has dismissed the identical contention in the instant case. *Id.* at 501-02.

constituted a violation of the confirmation order and § 1327(a).  *Id.* at 502-03.[6]

If the State's contention that its post-confirmation collection activities are not affected by the provisions of a confirmed plan were to be accepted, then a creditor with protection against the automatic stay would be free to collect a debt in any way it sees fit, even if the confirmed plan provided for its claim in full.  The Court declines to accept the State's argument in this regard and concludes, based on a plain reading of 11 U.S.C. § 1327(a), informed by the discussion of that section in *Gellington*, that Florida's post-confirmation continuation of a wage deduction order in effect against Mr. Fort's income, to the extent that it sought payment of such Debtor's pre-petition support obligation, did violate the provisions of § 1327(a).[7]

## III.

## POST-PETITION INTEREST UPON SUPPORT OBLIGATION

Mr. Fort has conceded that post-petition interest is due upon the State of Florida's allowed claim and that the confirmed plan does not provide for the payment of such interest.  In his response to the State of Florida's Motion for Summary Judgment, Mr. Fort notes that "the Debtor has acknowledged that post-petition interest accruals are not dischargeable."  *See* Response to Defendant's Motion for Summary Judgment at 3.  This concession is correctly made

---

[6] However, because the attorney general agreed to promptly refund the amounts garnished, the court found that the actions were not malicious and, therefore, did not impose sanctions.  *Id.*

[7] As the State of Florida has expressly reserved any arguments in opposition to any sanctions and or requests for turn-over of property under the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity, this Court will not examine the consequence of such violation at the present time.

and the Court concludes that the State of Florida is entitled to be paid the amount provided by

the confirmed plan together with interest. *See, e.g., Kielisch v. Educational Credit Mgmt. Corp.*,

258 F.3d 315, 321 (4th Cir 2001) ("Section 502(b)(2) [which provides that a court shall allow a

claim except to the extent that such claim is for unmatured interest] does not 'freeze' the debt of

the student loan debtor [and] interest continues to accrue during the pendency of the bankruptcy

proceedings.").

IV.

**EFFECT OF BANKRUPTCY COURT ORDER ONLY PARTIALLY ALLOWING
PROOF OF CLAIM AND CONFIRMATION OF PLAN PROVIDING FOR
PAYMENT OF THE ALLOWED CLAIM AMOUNT**

Mr. Fort argues that this Court's Order allowing the State's claim in a reduced

amount is *res judicata* as to the amount of the claim. Florida filed a proof of claim pursuant to §

501, to which the Debtors filed their Objection in accordance with § 502 and properly served it

upon counsel for the State. As already noted, the order served with the Objection gave the State

a full opportunity for a hearing. Under the terms of that order there was no requirement of a

hearing in the absence of any reply to the Objection. Nevertheless, one was held and the allowed

amount of Florida's claim was established by a ruling of this Court after receipt of evidence

supporting such Objection. The State, however, argues that, while the amount of the allowed

claim may have been determined for the purpose of this case, the disallowed portion of the claim

is a debt that passes through the bankruptcy unaffected. In support of its position, the State cites

11 U.S.C. § 1328(a) and the decision in *In re Five Boroughs Mortgage Co.*, 176 B.R. 708. The

State's argument relies heavily upon the distinction between a "claim" and a "debt" made in that

decision.

15

In *Five Boroughs*, the court was faced with a situation in which a secured creditor had obtained relief from the automatic stay and had proceeded under New York state law to initiate foreclosure proceedings. *Id*. at 709. The debtor attempted to circumvent the normal New York foreclosure procedure, which apparently involved the appointment of "referees" to determine, for the purpose of establishing the entitlement to foreclosure sale proceeds, the amount owed by the debtor under the promissory note between the debtor and the creditor, by filing a motion seeking a determination in the bankruptcy court of the amount of the claim. The debtor also notified the referees that it disputed the amount claimed by the mortgagee to be due. *Id*. Once this motion was filed, the referees appointed in the state court proceedings halted the performance of their duties, thinking themselves bound by the bankruptcy court's determination of the claim amount. *Id*. The creditor then filed a motion in the bankruptcy court seeking to compel the referees to fulfill their duties. *Id*. The debtor argued that the referees would be bound by the court's determination regarding the amount of the claim. *Id*. at 709-710. However, the court observed that the automatic stay had been lifted, the judicial foreclosure proceedings had commenced, and that the referees' function was to determine the outstanding obligation under the promissory note between the parties. *Id*. at 711. The court observed that the amount owed under the promissory note was governed by state law and categorized it as a "debt," and held that the amount of the debt was entirely distinct from the amount of the "claim" against the estate in bankruptcy which may or may not be allowed by the court. *Id*. at 711-714. Therefore, the court ordered the referees to proceed as required in the state court judicial foreclosure proceedings. *Id*. at 715.

In analyzing the applicability of the *Five Boroughs* decision to the issues

16

presented in the present proceeding, some observations are appropriate.  First, on the merits of

the motions before it, the court clearly ruled correctly.  The lender had been granted relief from

the stay and was entitled to pursue the normal applicable state procedures incident to the

foreclosure proceeding which the bankruptcy court had authorized.  There was no reason

thereafter for the bankruptcy court at the instance of the debtor to reassert itself between the

mortgagor and mortgagee and undertake to resolve disputes between those parties for which

state law provided an existing remedy.  Indeed, if the bankruptcy court had acted as the debtor

requested, it would have usurped the very function which the referee procedure was intended to

serve.  Second, while the court in *Five Boroughs* was certainly correct in pointing out that there

is a difference between the amount to which the mortgagee might be entitled to receive from the

foreclosure sale proceeds and the amount its allowed claim might be in bankruptcy court, the

decision's language was considerably more expansive than what was necessary to decide the

precise issue before the court.  To illustrate that the determination to be made by the referees was

different than that which the bankruptcy court would decide, it would have been sufficient to

observe, to use perhaps the simplest possible example, that the amount which would be due for

foreclosure purposes would be the amount due and owing at the time of the actual foreclosure

sale or settlement, presumably, while the critical determination with respect to the bankruptcy

case would be the amount due as of the filing date.[8]  The opinion does make a distinction, as

counsel for Florida notes, between the terms "debt" and "claim."  The former is defined in that

decision to mean the original loan proceeds provided by the lender to the borrower plus all other

---

[8] 11 U.S.C. § 502(b).  The amount due on the filing date does not include "unmatured interest," § 507(b)(2), but a secured creditor having recourse to collateral worth more than its petition date claim "shall be allowed . . . interest on such claim."  11 U.S.C. § 506(b).

17

amounts due the lender under the terms of the contract between the parties, less all payments

made by the borrower.  *Id*. at 712.  "Claim" is defined as "the assertion of the right to a

distribution from assets of the debtor's bankruptcy estate."  *Id.*  Most striking about the court's

discussion of the definitions it offers to these terms is that it contains no mention of the

definitions provided by the Bankruptcy Code to the very same terms.  The Code defines "claim"

to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payments, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5).  In a striking model of brevity, the Code defines "debt" as meaning simply

"liability on a claim."  11 U.S.C. § 101(12).  While this Court agrees with the ruling made in

*Five Boroughs* and believes that such decision does demonstrate that there is a difference

between what a borrower may owe a lender under a loan contract and the amount of the lender's

"allowed" claim for bankruptcy purposes, it ultimately concludes that such decision does not

offer much help on the question of the legal consequences flowing from the incorporation of an

allowed priority claim in a confirmed chapter 13 plan.

      The State further argues, in accord with its understanding of the distinction

between "claim" and "debt," that the language of § 1328(a)(2) supports its position that a chapter

13 bankruptcy discharge cannot relieve a debtor from even a disallowed portion of a claim for a

domestic support obligation.  Section 1328(a)(2) provides that after completion of all payments

18

under the plan, the Court shall "grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 . . . , except any debt . . . of the kind specified in . . . paragraph . . . (5) [*i.e.*, a domestic support obligation] . . . of section 523(a)."  11 U.S.C. § 1328(a)(2) (emphasis added).  The State argues that an Order from this Court establishing that the allowed amount of the claim provides the male Debtor's sole obligation thereunder would contravene the established domestic support obligation exception to discharge.  The problem the statutory language raises from the Debtor's perspective is not with respect to that portion dealing with debts "provided for by the plan" because even if a debt is "provided for," if the treatment so provided is anything less than payment in full, it would make no sense to permit a debt which is non-dischargeable in chapter 13 to be discharged as long as such debt has been explicitly provided for.  No, the difficulty concerns the language "or disallowed under section 502" because what is in dispute in this proceeding is that portion of Florida's claim which was disallowed pursuant to the Debtors' Objection.  To interpret this statutory language correctly in the context of the present dispute it may be helpful to note that the general purpose of the section in question is to provide for a discharge of debts, not for denial of discharge.  For debts that are dischargeable, it is perfectly logical and understandable that the discharge which a debtor obtains after successfully completing his or her confirmed chapter 13 plan will be effective as to both debts which have been provided for in such plan and also those which have been "disallowed."  Therefore, it may not be appropriate to try to apply this language across-the-board with respect to debts which are both non-dischargeable and disallowed.  Even if one attempts to do just that, however, there is a meaningful interpretation for such language other than that asserted by counsel for the State.  To re-use an example already noted in this opinion, § 502(b)(2) provides

19

for disallowance of unmatured interest as of the filing date.  Accordingly, post-petition interest on a non-dischargeable debt would be disallowed by § 502, but even so would be excepted from the scope of a chapter 13 discharge.  Such a construction of the language is not only entirely reasonable, but it also avoids the absurd situation which would be presented by a construction which would except from discharge child support or educational loan debts which had been disallowed as valid claims against the debtor or the bankruptcy estate on a basis such as payment in full.  In short, there is no need to except from discharge a debt which no longer exists.

Florida further asserts that its position is supported by *Katz*, 546 U.S. 356, from which the State draws the principle that this Court's jurisdiction in ruling upon a proof of claim is limited to adjudication of the extent to which the bankruptcy estate is responsible for the claim.  This argument apparently relies on the historical observation in that opinion that "the jurisdiction exercised in bankruptcy proceedings was chiefly *in rem*," *id.* at 378, as the State argues that because the process of allowing a claim against the bankruptcy estate is based on an adjudication of the rights in the *res* (*i.e.*, the bankruptcy estate), a bankruptcy court is without jurisdiction to extend its ruling beyond that point.  In its reading of *Katz*, however, this Court is unable to find a principle of law announced in that case which supports this broad contention.

To summarize, this Court is not persuaded by Florida's arguments that bankruptcy court jurisdiction with respect to claims filed in a bankruptcy case is limited, either constitutionally or by the language of the Bankruptcy Code, solely to determining the distribution rights vis-a-vis the bankruptcy estate of those claims.  Accordingly, it rejects the contention that a bankruptcy court's determination of any claim's allowed amount can have no effect apart from the bankruptcy case.

20

V.

**INTERSECTION OF BANKRUPTCY COURT'S CLAIM ALLOWANCE PROCESS
AND STATE COURT JURISDICTION TO DETERMINE SUPPORT OBLIGATIONS**

The resolution of the most significant dispute before the Court seems to turn upon

the question of whether the Debtors properly challenged the claim filed by Florida in their case

by means of an objection to such claim in the bankruptcy court or whether, as Florida now

asserts, Mr. Fort in response to such claim ought to have filed in the proper Florida state court a

motion or other appropriate pleading seeking a determination by that court of the balance owing

upon his support obligation as of the date the bankruptcy petition was filed in this Court.  It is

unfortunate that the State didn't make such a contention in response to the Objection filed in

opposition to its claim or in an objection to confirmation of the Amended Plan, as this would

have led to the most efficient resolution of the issue.

Under ordinary circumstances, once a debtor files a petition for relief under

chapter 13 of the Bankruptcy Code, any creditor seeking payment of its claim(s) in the

bankruptcy case will file a proof of claim.  *See* 11 U.S.C. § 301 (providing for the filing of a

voluntary petition); 11 U.S.C. § 501(governing the filing of proofs of claim).  If a debtor objects

to a claim, then a hearing will be held and the claim will be allowed in an amount as determined

by the bankruptcy court.  *See* 11 U.S.C. § 502(b) (setting forth the procedure to determine the

allowed amount of claims to which an objection has been made).  Once the debtor has confirmed

his chapter 13 plan and completed all payments required thereunder, he receives a discharge of all debts provided for by the plan or disallowed under section 502.  *See* 11 U.S.C. § 1328 (governing the discharge of debts of a chapter 13 debtor).  The present dispute, however, concerns a specially favored type of claim, a domestic support obligation, which is not only an obligation which cannot be discharged in a chapter 13 bankruptcy case,[9] but also is one entitled to first priority of payment by the trustee under the terms of a confirmed plan.[10]  Furthermore, the Bankruptcy Code requires a chapter 13 debtor who has completed his or her payments under a confirmed plan to certify, as a pre-condition to obtaining a chapter 13 discharge, "that all amounts payable [upon a domestic obligation required by a judicial or administrative order or by statute] that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid."[11]  The intent of Congress that bankruptcy debtors not be able to avoid responsibility for paying in full the "domestic support obligations" for which they are responsible is unmistakable.

The State of Florida argues that this Court's Order determining the unpaid balance of its allowable claim arising out of a domestic support obligation is tantamount to the assumption of the state court's jurisdiction and such Order would therefore violate the doctrine of comity.  Relatedly, the State argues that the domestic relations exception to federal court jurisdiction also bars this Court from making any such determination.  The State relies heavily

---

[9] 11 U.S.C §§ 1328(a)(2) and 523(a)(5).

[10] 11 U.S.C. § 1322(a)(2) ("The plan shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.") and § 507(a)(1) (providing first priority to payment of domestic support obligations).

[11] 11 U.S.C. § 1328(a).

on the decisions in *Marshall v. Marshall*, 547 U.S. 293, *Younger v. Harris*, 401 U.S. 37 (1971),

and *Friedman's, Inc. v. Dunlap*, 290 F.3d 191 (4th Cir. 2002) (applying the *Rooker-Feldman*

doctrine).  In making such argument, the State characterizes this Court's Order allowing its claim

in reduced amount and any subsequent order this Court may enter limiting the State's recovery

to such reduced amount as an alteration of a valid state court order.  The Debtor rejects this

characterization.  In his Objection to Claim, Mr. Fort never questioned the validity or sought

alteration of the Florida State Circuit Court's order establishing the amount of domestic support

arrears owed.  Instead, he maintained that, according to the order and the documents provided to

him by the State of Florida, a clerical error had been made, and that, under those documents, he

only owed $2,850.22 to the State of Florida for pre-petition domestic support arrears and not the

$14,393 that the State alleged.  Thus, the Court, in sustaining such Objection and allowing the

claim in reduced amount, did not alter a valid judgment of the state court but rather corrected a

clerical error on the face of documents showing that the actual amount owed was less than the

amount alleged in the proof of claim.[12]

Essentially, the *Younger* doctrine is one which stresses restraint of the exercise of

federal jurisdiction in the interest of comity.  In the case from which such doctrine arises,

*Younger v. Harris*, 401 U.S. 37, the Court was faced with the question of whether it was

appropriate for the federal courts to exercise jurisdiction and enjoin a pending state court

prosecution.  *Id.* at 38-41.  The Court found probative the fact that there was an "acute, live

controversy" in which the individual being prosecuted had the opportunity to raise the same

---

[12]  Of course, the State, had it disagreed, had the opportunity to provide its records in
response to the Debtor's Objection.  The State elected not to do so.

23

claims which he was raising in the federal courts.  *Id*. at 41, 49.  In the situation where the

federal courts were asked to exercise their jurisdiction to enjoin or otherwise interfere with

*pending* state actions, the Court held that federal courts should decline such opportunities.  *Id*. at

53-54.  Here, the state court action at issue involved an order establishing the payment of

domestic support arrears.  As noted above, the order and judgment of the state court are left

unaltered.  This case is not one in which, for example, a debtor objected to a claim for child

support on the ground that the state court had awarded overly generous child support or that the

support awarded was somehow inconsistent with applicable state law on the subject or in other

evident manner had sought either a review of the legal correctness of a state court order or some

modification of it.

   The *Rooker-Feldman* doctrine similarly limits the jurisdiction of federal courts.

The doctrine "generally prohibits lower federal courts from reviewing state court decisions."

*Dunlap*, 290 F.3d at 196.  The doctrine precludes direct review by the lower courts of

adjudications made by state courts.  *Id*.  Certainly this Court has not in any way attempted to

review or alter the decision of the relevant Florida court.  Instead, the Court has acted upon the

Debtors' contention, supported by some evidence, that the amount contained in Florida's claim

reflected a mathematical or clerical error, not that the underlying judgment was erroneous.

Unfortunately, the State's proof of claim contained no accounting or itemization from which any

confidence might have been gained that the Debtors' contention regarding Mr. Fort's payment

history was mistaken.  Florida's failure to respond to either the Objection to its claim or the order

disallowing a substantial portion of such claim, or to object to confirmation of the Debtors' plan

which provided for payment of the claim in the reduced allowed amount, gave the Court as well

24

as the Debtors strong reason to believe that the Objection had been reviewed, considered and determined to be well taken.

The State further argues that the relief requested by Mr. Fort runs afoul of the domestic relations exception to federal court jurisdiction and cites, among other cases, the decision in *Marshall v. Marshall*, 547 U.S. 293, in support of its position.  In that decision, the Court first observed that the domestic relations exception to federal jurisdiction is a judicially created doctrine.  *Id*. at 299.  The Court also seemed to warn against an expansive reading of such exception as a result.  *See id*. at 299-300.  In tracking the history of such exception, the Court made clear that such exception was crafted as a result of a "'century-long interpretation' of the diversity jurisdiction statute."  *Id*. at 307 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992)).  The Court specifically left open the question of whether the probate or domestic relations exceptions extended to limit federal bankruptcy jurisdiction.  *Id*. at 307-09.

Notwithstanding this Court's lack of intent to do anything in this case other than to allow Florida's claim in the correct amount and to confirm a chapter 13 plan providing for its payment, the issue of the intersection of the jurisdiction of the Circuit Court for the Eighth Judicial Circuit of Florida with that of this Court under the circumstances presented in the present proceeding has proved the most difficult to resolve.  Under the customary procedures of this Court, the Debtors have done what they could reasonably have expected to be necessary to determine any dispute about the amount properly owing under the Florida court order.  Their counsel filed an Objection to the State's proof of claim and duly served it on the specific attorney handling the support claim.  This Court issued its customary order giving the creditor thirty days to respond to such Objection and informing it that a failure to respond would be

25

treated as a default authorizing the objecting party to tender an order sustaining the objection

without further notice or hearing.  Florida failed to respond and this Court did sustain the

Objection, although following a hearing at which the Debtors' counsel provided evidence to the

Court supporting such Objection.  Neither did the State respond to the order disallowing most of

its claim or to the chapter 13 plan proposing to pay the full amount of the claim.  It also did not

appeal or otherwise respond to this Court's order confirming such plan or take any action to

rescind the wage deduction against Mr. Fort's income.  Under these facts there is plenty of

authority that a confirmed plan is res judicata as to all issues dealt with in the confirmation order.

*Valley Historic Ltd. P'ship*, 486 F.3d at 838; *First Union Comm'l Corp. v. Nelson, Mullins, Riley*

*and Scarborough (In re Varant Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996)*; Linkous*, 990

F.2d at 162; *In re Harvey*, 213 F.3d at 321; *Donnelly*, 73 Fed. Appx. at 572; *In re Coulter,* 305

B.R. 748, 756 (Bankr. D.S.C. 2003).  Clearly the Debtors did all that should have been necessary

"[w]hen the rights of specific parties become an issue . . . [to serve] the initiating motion or

objection on the affected party[.]"  *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d

296, 301 (4th Cir. 2002) (educational loan debt cannot be discharged by provision in confirmed

chapter 13 plan instead of filing an adversary proceeding).  Furthermore, while ordinarily an

allowed or disallowed claim can be reconsidered for cause pursuant to § 502(j) and Bankruptcy

Rule 3008, case authority is to the effect that, at least as to regular claims, a confirmed chapter

13 plan providing for the amount of a claim is final.  *In re Duke*, 153 B.R. 913, 917 (Bankr. N.D.

Ala. 1993) (citing numerous decisions); *In re Lipford*, 2006 Bankr. LEXIS 4145, at * 2 (Bankr.

26

M.D.N.C. March 10, 2006) (following *Duke*).[13]  In this legal environment the State was really

playing with fire in failing to participate in the bankruptcy case after filing its proof of claim, an

approach which did not secure the proper treatment of the full amount of the support claim it had

undertaken to protect.[14]

       This particular dispute brings into direct confrontation two important and strong

policies which the Bankruptcy Code seeks to promote - the reliance which all parties in interest

place in the finality of the provisions of a confirmed chapter plan, which § 1327(a) aims to

protect, on the one hand, and the almost sacrosanct nature of domestic support obligations even

from relief in a bankruptcy case, which §§ 362(b)(2), 507(a)(1), 523(a)(5), 1322(a)(2),

1325(a)(8), and 1328(a)(8) all safeguard, on the other.  The protection which courts perhaps

almost instinctively give to the provisions of confirmed plans as being final and not open to re-

litigation breaks down somewhat in cases involving non-dischargeable claims.  As Judge Waites

noted in *Coulter*, "While the payment of [criminal] restitution can be managed in a Chapter 13

plan, upon failure to be paid in full, the balance is nondischargeable."  305 B.R. at 760-61.

Other decisions, including one this year from the Bankruptcy Court for the Middle District of

Florida, have permitted taxing authorities holding non-dischargeable claims to collect them even

when that activity directly impeached provisions of confirmed chapter 11 plans to which they

---

[13] It has been noted that a debtor can file a proof of claim for a non-dischargeable debt when the creditor fails to do so to protect the debtor from post-bankruptcy liability upon such debt.  *In re Nettles*, 251 B.R. 899, 902 (Bankr. M.D. Fla. 2000).

[14] *See, e.g., In re Munck*, 2007 Bankr. LEXIS 4095 at *18 (Bankr. D. Kan. Dec. 7, 2007) ("Once the Chapter 13 plan was confirmed, and no appeal was taken from the confirmation order that clearly adopted the provisions of the plan, the determination that the debt owed Ms. McGuire did not fit within the scope of § 523(a)(5) became binding upon the parties.")

had not objected.[15]  *See In re DePaolo*, 45 F.3d 373, 375-76 (10th Cir. 1995); *In re Gurwitch*,

794 F.2d 584, 586 (11th Cir. 1986); *In re Becker's Motor Transp., Inc.*, 632 F.2d 584, 584 (3d

Cir. 1980), *cert. denied*, 450 U.S. 916 (1981); *In re Newman*, 402 B.R. 908, 912-13 (Bankr.

M.D. Fla. 2009).[16]  Even though these decisions constitute weighty authority, this Court believes

that they give rather short shrift to the importance of § 1141(a) which, similarly to § 1327(a),

binds "each creditor" to the "provisions of a confirmed plan" and the Court has not found any

controlling authority from the Fourth Circuit Court of Appeals adopting their rationale in either

the chapter 11 or the chapter 13 context.[17]  This Court prefers to rest its decision upon a more

---

[15] One expressed rationale behind such decisions is that § 523(a)(1) clearly provides for
the non-dischargeability of tax claims.  In *Newman*, for example, the court permitted the taxing
authority to collect on its tax claims even though every portion of the claim filed except for that
portion treated as a general unsecured debt was paid through the debtor's chapter 11 plan.  402
B.R. 912-14.  Of specific importance in that case was the language in § 523(a)(1) that provides:
"A discharge . . . does not discharge . . . any debt for a tax . . . *whether or not a claim for such
tax was filed or allowed*[.]" 11 U.S.C. § 523(a)(1) (emphasis added).  The absence of similar
language in § 523(a)(5), which provides for the non-dischargeability of domestic support
obligations, serves to distinguish these decisions from the issue presented here.

[16] This same principle has been extended to non-dischargeable debts other than tax
obligations in *In re Bartleson*, 253 B.R. 75 (B.A.P. 9th Cir. 2000), which held that a confirmed
chapter 11 plan did not preclude creditors "from collecting their nondischargeable claims outside
the bankruptcy" when the confirmed plan did not contain an injunction provision.  *Id*. at 84.

[17]  Section 1141(a) provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the
> provisions of a confirmed plan bind the debtor, any entity issuing
> securities under the plan, any entity acquiring property under the
> plan, and any creditor, equity security holder, or general partner in
> the debtor, whether or not the claim or interest of such creditor,
> equity security holder, or general partner is impaired under the plan
> and whether or not such creditor, equity security holder, or general
> partner has accepted the plan.

11 U.S.C. § 1141(a).  Similarly, § 1327(a) provides that the "confirmed plan bind[s] the debtor
and each creditor, whether or not the claim of such creditor is provided for by the plan, and

narrow ground rooted in the facts of this particular controversy.  In this proceeding the parties

have stipulated that the records of the pertinent Florida court reflect that the amount which was

owing on Mr. Fort's support obligation as of the filing date of this case was the same amount

stated in the proof of claim filed in the Debtors' case.  The 1995 court order which determined

Mr. Fort's existing and future child support obligations expressly provided that payments upon

that liability must be made to the Clerk of that court and that no credit would be given for any

payments not so made.  After very mature consideration of these facts, the Court concludes that

for it to give Mr. Fort credit for payments which may not have been made in conformity with the

requirements of that order would inevitably involve this Court in a process which might very

easily result in a determination by it which would be inconsistent with his liability as adjudicated

by that court.  That is not to say that the Debtors cannot challenge the figure contained in

Florida's proof of claim, but just that Mr. Fort should do so in the Florida court which has

jurisdiction over the support claim.  If there has been some kind of mathematical or other clerical

error, there is no reason to suspect that such court will not give his evidence just as fair a hearing

as the Debtors might expect in this Court.  It cannot be denied that such recourse is not as

convenient to the Debtors as the summary procedure which this Court provides in the pending

bankruptcy case, but this Court is persuaded that it ought not to nibble around the edges of the

Florida court's jurisdiction over the child support obligation upon which Mr. Fort is responsible.

The Court concludes that the boundaries of its own jurisdiction and that of the Florida court need

to be clearly defined with no overlapping territory and that proper comity to that court dictates

that any determination of the viability of the disallowed portion of the State's claim ought to be

---

whether or not such creditor has objected to, has accepted, or has rejected the plan."

29

made in that court.

While this conclusion is founded on a concern about this Court being utilized, even in complete good faith, as an indirect means to affect a debtor's liability for a domestic support obligation, the undersigned believes that it is also supported by a careful analysis of the relevant statutory language. To be specific, payment of a domestic support obligation enjoys the status of being entitled to first priority in the distribution scheme established by § 507(a). Accordingly, a chapter 13 plan *"shall"* provide for the "full payment . . . of [such a claim] . . . unless the holder of a particular claim *agrees* to a different treatment of such claim." 11 U.S.C. § 1322(a)(2) (emphasis added). So, while a debtor and his or her domestic obligation creditor may agree on something other than what the law otherwise provides, upon their failure to reach any such agreement the claimant must be paid in full. To "agree" means just that, an actual meeting of the minds, it is not equivalent to a failure to make an objection to some proposed treatment. *In re Smith*, 212 B.R. 830, 831 (Bankr. E. D. Va. 1997) ("[A] failure to object to confirmation does not satisfy the consent requirement."); *In re Northrup*, 141 B.R. 171, 173 (N.D. Iowa 1991) ("[A]n express affirmation of consent is required to meet the requirements of 11 U.S.C. § 1322(a)(2)."). Florida did not "agree" that its claim was $2,850.22 or that its claim would be satisfied in full by the payment of such amount, even though its failure to respond to the Debtors' Objection led to its claim being set at such amount for the purpose of confirming a chapter 13 plan. Should the Debtors complete their payment obligations, they will be entitled to a discharge upon satisfying all other statutory requirements as provided in § 1328. One of those requirements is a certification that all domestic support obligations incurred up to the time of the certification have been paid, "including amounts due before the petition was filed, but only to the

30

extent provided for by the plan[.]" 11 U.S.C. § 1328(a).  Although a chapter 13 debtor is not

required to certify payment of pre-petition domestic support obligations not provided for in the

plan, any such amounts will be excepted from discharge by § 1328(a)(2).  Attempting to apply

this discussion to the facts presented in the instant controversy, Florida filed a proof of claim in

the amount of $14,393, to which the Debtors objected as being a figure which overstated the

*actual* amount of its claim.  Although the State could have (and in this Court's view should have)

responded to the Objection and either agreed with it or disputed it, Florida did neither.  Now that

failure to respond had consequences.  For one, it resulted ultimately in the confirmation of a

chapter 13 plan which provided for that claim in the amount asserted in the Objection.  Another

consequence was that the State became bound to the provisions of the confirmed plan and was

precluded from acting inconsistently with those provisions during the term of the plan's

existence, such as undertaking independent collection efforts or attempting to overturn the

confirmation order.  Not included in those consequences though is the failure to respond being

treated as its agreement to the reduction of its actual domestic support obligation claim to some

lower amount for discharge purposes.  For most claims which can be presented in a bankruptcy

case there is no difference in consequences between a filed claim being reduced by agreement of

the parties and one reduced as a result of a court adjudication because the bankruptcy court

generally has equal right to fix how much may be owing on a claim, even a non-dischargeable

one, as has any other court or other competent tribunal.  For claims such as support obligations

or criminal conviction restitution sanctions, however, the bankruptcy court has no jurisdiction to

determine, impose or liquidate them.[18]  This Court concludes, after reflection, that for it to attempt to determine the amount owing as of the filing date upon even an already established claim of such kind runs an unacceptable risk of inconsistent computations of what incontrovertibly is a non-dischargeable obligation.

## CONCLUSION

On the basis of the foregoing rationale, the Court concludes that (1) this Court's determination of the petition date amount of Mr. Fort's domestic support obligation and the incorporation of such amount into the Debtors' confirmed plan, even if erroneous, is binding upon Florida with respect to the treatment of its claim in this case, (2) the State's continuation of a wage deduction order against Mr. Fort's income subsequent to confirmation for the purposes of collecting pre-petition delinquent support during the term of the Chapter 13 Plan did not violate the automatic stay but did transgress § 1327(a), which makes a confirmed plan's provisions binding upon each creditor, (3) the State is entitled to post-petition interest upon its claim, whatever its actual correct amount may be, and (4) this Court's claims allowance process will not be allowed to supplant the Florida state court's jurisdiction to determine the amount owing by Mr. Fort and any amount in excess of that for which payment is provided in the confirmed plan will continue to exist until fully paid as a non-dischargeable obligation on his part.  This Court will enter a contemporaneous Order in accord with these rulings.

---

[18] *See also* 28 U.S.C. § 157(b)(5):  "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

This the 30th day of June, 2009.

_____

UNITED STATES BANKRUPTCY JUDGE